Good morning, your honors. Scott Hubbard for Tony Martinez. Are you still pursuing your appeal, or what's the story? We are still pursuing it. What's going on with this? On the Wednesday before Thanksgiving, you file a motion to dismiss. And then on Saturday, during the weekend holiday, you say you don't want that filed. And there was a motion to seal. And I wonder as well that you were recently sanctioned in front of Judge Mueller for $5,000 for what they call smithing or smiting or something. I wasn't sanctioned in front of Judge Mueller. Was your firm? My father was, but I wasn't. I don't want to go into the reason the document was sealed was because it involved confidential attorney-client communications, which if the court orders me to do so right now, I would be more than happy to reveal. I don't see how you can reveal it anyway. How could you file something that reveals attorney-client privilege? My understanding is you're not allowed to reveal privileged information except to prevent a crime. It's funny you should mention that because I'm studying for the Hawaiian Bar. And one of the aspects is I have to take the MPRE again because I took it 14 years ago. And under the MPRE, attorneys can reveal attorney-client communications to the court under seal, or in the alternative, the court can order them to reveal it. For what reason? Isn't it to prevent a future crime, imminent future crime? That is one of the reasons. Another reason is to prevent a fraud. So which one were you doing? Preventing a crime or preventing a fraud? I was doing it because the information that was revealed to me was attorney-client communication. But it wasn't even under penalty of perjury. Unless it's to prevent a crime or to prevent a fraud, you can't reveal attorney-client privilege. Isn't that right under your Bar Review course or whatever? You can. Forgive me, Your Honor. I don't want to shoot this one from the hip. With the court's permission, I can file a 28-J letter, just be one page, and set forth the standards in which attorneys can reveal attorney-client communication to the court. And... Seems to me the time to research that was before you revealed it, but that's... Well, frankly, Your Honor, I thought my client instructed me before Thanksgiving to dismiss the case. And I made that clear in my declaration. After Thanksgiving, on the Saturday, my client called me and changed his mind. And based on that, I notified the court that I wished to withdraw it. So, that said, without going into too much detail in open court, I understand why he did it, and ultimately I am a servant of my client. So, I have to obey his wishes. Well, was the way... The basis for the motion to dismiss, it looked like that you're trying to avoid attorney's fees on this, too. No, Your Honor. Their attorney's motion was denied. Well, we didn't get any opposition from the other side, so I don't really... I'm sure I'll hear what their position is. And I don't fault them for that because it was filed over a holiday. And this matter's been pending for a long time. And so, that was a little suspicious in terms of timing. Well, the court can order me to reveal it. And if the court wishes me to reveal it, I am more than happy to reveal it right now. If the court doesn't have any further questions, I'd like to reserve the rest of my time.  Why do you keep citing metabolite for a proposition that it doesn't stand for? Could you be... Metabolite, well, metabolite was decided in the context of an anti-SLAPP case. And it had to do with what the court was trying to decide was whether a state anti-SLAPP motion, whether it collided with the federal rules of civil procedure in terms of... And basically, what they decided was that you can bring an anti-SLAPP case in federal court and they'll apply the substance, but it's not going to be a ban for discovery continuing. But it doesn't stand for the proposition that you're citing it for. Forgive me for asking. Are you referring to the reply brief or the opening brief? Well, but you're saying that you cited metabolite in front of all sorts of cases in front of district courts, where you're saying that entitles you to a continuance if the discovery period hasn't closed. And that's, in my view, that's not what metabolite stands for. And first, you want to be relieved of having been diligent, but what metabolite, the context of metabolite and how it was decided is really important. And the purpose of it was to say, if we're going to allow state law to be applied in federal court against state law claims on an anti-SLAPP concept, that discovery isn't stayed like it is in the state proceedings. It has nothing to do with whether, it doesn't restrict a federal district court's discretion to decide whether you've been diligent and whether allowing you additional discovery would come up with anything. And here the district court found that you hadn't been diligent, that you'd known about this, that you hadn't done anything, and that all that you were raising was speculation about what, you know, what you might be able to show at that point. And so I think you're citing metabolite, and apparently it's, you know, some district courts are, you know, maybe a little bit confused about what it means. But if you look at the context of how it was decided, I don't think it says what you say it says. Fair enough, Your Honor. I just looked, I realize you're talking about the New Balance appeal now, the first appeal. Yes. And I looked at my opening brief. I cited to metabolite in the standard review section, setting forth the standard of review, and I cited to metabolite again on page three of the reply brief, quoting Anderson v. Liberty Lobby, Inc., which said, although Rule 5016 facially gives judges the discretion to disallow discovery when the nonmoving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the ruling as requiring rather than merely possessing, blah, blah, blah, blah, blah. So my citing of metabolite was basically an indirect reference to the Anderson v. Liberty Lobby quote, which supports our position, and that was on page three and extends to page four of the reply brief, page seven and eight based on the court's header. As it relates to New Balance, it's my understanding from reviewing the record that you never filed any response to the motion for summary judgment? We filed a response. It was the Rule 5016. No, no, you did not. You filed a motion. We didn't file an opposition, sir, but we did file a response. And that was the ---- What is the response? The response is the Rule 5016 continuance. The motion to continue. That was your response? Did we phrase it as a motion, Your Honor? You did. Then, yes. We phrased it as a motion, and it was in response to their ---- And served the first discovery request of the whole time. We did, Your Honor. Did you ever respond when the defendant filed a statement of undisputed material facts? No, Your Honor. Did you ever say anything about they're not the way it is? I mean, my worry is whenever I was in your shoes, and I was in your shoes quite a bit, and so we have these defendants who are filing these statements of undisputed material facts upon which one can enter summary judgment, and the best thing for me to do in that situation is to file disputed facts so the court doesn't act. I just wondered if you ever did that. We did not for two reasons, Your Honor. First, their statement of facts was based entirely on evidence that they solely controlled, testimony from their witnesses, store measurements from a store that they controlled. So we didn't have the facts to oppose it. You could have gone out there. Well, yes, we could have, which kind of brings me to a springboard to the ---- I mean, one of the things there was that you're alleging that there wasn't like an ATM pay point, which that didn't meet standards, and there wasn't even one there. That was for the second facility, the Eddie Bauer ---- Well, for New Balance, they offered you an inspection before the deadline, and you refused. They did, and we did. Because their inspection, we could only inspect the places that they said that we could inspect. We couldn't inspect the entire facility for other architectural barriers. They chose a day. Of course, now we don't need an expert. They chose a day when our expert was unavailable. But there was an original point you wanted to make. Well, my worry is this. When I have a motion for summary judgment in front of me, it seems to me somebody ought to put something in that says, I don't agree with it, this is the reason why. When there's a statement of undisputed material facts, one ought to at least allege the allegations under affidavit that they made in the complaint so that there's at least something in the record that has an affidavit supporting what they've alleged in the complaint. And all I got was an affidavit from you which said, I need to conduct the following discovery and obtain the following essential facts. But there is nothing about what those essential facts are. It just says what you need to do for the discovery. So then I look at the rule and I say to myself, well, what does he need to do? Well, he needs to say what facts he wants. Well, there's no facts in the affidavit. He says he wants to inspect the facility. He wants to identify the barriers. I thought there would have been already an identification. They claimed three problems. I thought at least we would have had an affidavit to that effect. They want to obtain expert testimony. They want to depose. Now these people who are alleging what they said, that has nothing to do with what facts you're trying to do. Fair enough, Your Honor. Let me write something down so I don't forget it a third time. First and foremost, if you look at the reply brief, there was a method to our madness. This is not the first time. Like you, this is not the first time that someone has sprung a summary judgment motion. Sprung? Sprung. This is not exactly sprung. Yes, Your Honor. Let's go ahead. The timing was sprung. Don't say sprung because I'll disagree. Just say what you've got to say. This is not the first time we were served with a summary judgment motion in lieu of an answer or early in litigation before we had a chance to meaningfully conduct discovery. Weren't you in October told they were going to file a motion for summary judgment? Yes. And at that point you said you would be doing discovery? Indeed. And then the motion came in March, and you hadn't done any discovery until two weeks later than that? We had roughly four or five months. Keep in mind, this is a large facility. I mean, we all know the back of the bill. But the thing is that you control this when you file a lawsuit. When you file a lawsuit, you're not supposed to file a lawsuit unless there's any basis for it. Filing a lawsuit isn't a fishing expedition. That's true, Your Honor, and there is sufficient factual and basis for our claim as evinced by my client's testimony. But that said, I don't control every aspect of the lawsuit. I do not control when the defendants serve their summary judgment motion. But when you're told in October that they're going to give you a summary judgment motion and you say, well, just hold off while I do some discovery, and then nobody does anything until March, we've got October to March where nothing is done, you file an amended complaint, you still haven't got any discovery done. The amended complaint was in February 15th of 2011. Still nothing done. They finally file their motion for summary judgment in March. And then two weeks later you say, well, give me some more time. I'm not entirely certain that the dates exactly line up because there was still, keep in mind, there were 26 defendants. We still had the 26F conference. So during this large period where they say we're going to move for summary judgment, we still couldn't propound discovery because we hadn't done our 26F conference yet. So there was this point where our window of opportunity for these 26 defendants was roughly about four months. And so in a case when we've been served with a discovery, a summary judgment motion early in litigation, as this is the case, in every instance we've asked for Rule 56D continuance and cited this Court's authority. I'm not sure we cite to that one. Let me go on further. I'm going to go back to the other complaints. As to Eddie Bauer, it's my understanding that we're still looking at Eddie Bauer, but that you've already admitted that all the barriers at Columbia have been remedied except for the aisles. Is that true? I'm not entirely certain about that. Let me pull up the Columbia brief very quick, or excuse me, the second opening brief very quickly. If memory serves, I think it was Eddie Bauer that had completely remedied everything except for the aisles. Well, I have down here P admits the barriers at Columbia have been remedied, but wants to continue with the one about the aisles. If memory serves, and I'm going to have to pull the order up for this one, I'm running out of time. Answer this question and then you're out of time. All right. Fair enough, Your Honor. I'd like to answer his question then. I believe one of them, the aisles were still at issue. The other defendant, the aisles were also still at issue, but Judge Burrell said that the injunctive relief was moot because the store manager promised to keep them clear in the future. Okay. My apologies. Thank you, Your Honor. Good morning. Good morning. Good morning, Your Honor. May it please the Court, my name is Myra Villmore, and I represent appellees Eddie Bauer and Columbia Sportswear Company. So do you have a position on this motion to dismiss? I know it was filed and there wasn't really time to do anything, so, but did you get them at all? Were you aware of them?  We received the motion to dismiss, and we also received the motion to dismiss. We received the Saturday withdrawal of the motion to dismiss. Of course, we would not oppose dismissal of the appeal with prejudice. However, in his motion, Martinez states that he wishes to dismiss the appeal on the grounds of lack of standing due to circumstances set forth in the declaration that the appellees were not privy to. So all we see is that he is admitting before the Court that he lacked standing at the time the suit was filed. So that doesn't really get rid of the suit anyway, does it? If it's dismissed for lack of standing, the suit can still be resurrected, right? It could potentially be resurrected, but the suit that my clients have had to litigate for years, he's now saying that he lacked standing to pursue that suit at the time he filed the complaint and that such an admission demonstrates frivolousness and would be grounds for the board of attorney's fees. The appellant is correct that our motion for attorney's fees was denied below, but at the time we were not aware that Martinez did not have standing at the time he filed the lawsuit. After he filed his motion to dismiss this appeal, he then filed a motion to withdraw the motion to dismiss. Yes, Your Honor. Does he have a right to do that? I was unable to research that, but given the short amount of time I had to prepare. Okay. Well, I mean, I suppose you had over the weekend, you had yesterday. I mean, the point is he files a motion and then before you for whatever reason respond to it, he withdraws the motion. Yes, Your Honor. Do we allow that? Do we allow him to withdraw his motion if he hadn't responded to it? If you had responded to it, I think it would be a trickier question, but if he. . . I mean, we had to read all this stuff on the weekend, so. . . If he puts it in and then pulls it back out before you respond, do we allow that? I'm not aware of what the rule is on that. I apologize, Your Honor. Let me ask you a question about the merits. This is a concern I have about the merits. If I understand correctly, Judge Burrell issued a scheduling order that gave them until July 24, 2012 to do discovery. Is that right? I believe so, Your Honor, yes. He did that in February. He gave them until July to do discovery. Yes. And you filed your motion for summary judgment shortly thereafter. Yes, Your Honor. Why isn't he entitled to go on vacation, pay attention to other cases, take a sabbatical, do whatever he wants, and then do his discovery within the time of the discovery cutoff? He can do his discovery whenever he wants to within the discovery cutoff, and he was allowed to do so. Well, not really, because then you filed a motion for summary judgment. He comes and says, I haven't done my discovery yet because I still have several more months under the deadline. And the judge says, too bad, you don't get until the deadline. Well, he had many months notice that we were going to file this motion for summary judgment. True, but he also had until July to do his discovery. Well, the discovery he's claiming he needed was to go into the facility and look at it. I don't care what it is. He's got until July. I mean, he can close his office, can't he, for six months and disappear until the discovery deadline? Well, if he was intending to close his office, if he was intending to disappear for several months during discovery, perhaps he should not have decided to file the lawsuit. I don't understand it. If he files a lawsuit, the judge says you have until July. And then says you're not diligent because you're not done before the discovery cutoff. If he's got until July, he's got until July. You know? If that were the rule, then that would mean that no party could file a motion for summary judgment because all the other side would have to do is say, you know what, I still have more time. I don't want to oppose it at this point. I need more time. But then the judge has to say, fine, I'm going to hold it until you finish your discovery. And I gave you until July. Well, he did conduct discovery. He didn't conduct sufficient discovery, and he didn't provide sufficient evidence to avoid summary judgment. But his time was up. He had people come in, look at both facilities, look at, take measurements, take numerous photographs without notice. And he was allowed to do that, and he submitted that evidence. So he had sufficient time to conduct his discovery. Let me ask you this. As it relates to the discovery, when a discovery deadline is set, does that necessarily suggest that one has until then to do his discovery? I mean, why set a discovery deadline? Well, the discovery deadline is set so that a party can't just drag the lawsuit on indefinitely. Oh, I understand, but you didn't answer my question. Because I asked him the questions that I had because I was very worried about him not doing anything, knowing that there had been a notice that you were going to do something with summary judgment, and then coming out and saying, I need more time when they got there. But the same question I now give to you. If we're going to have discovery deadlines in a case, why is it that one is allowed then, not allowed, to do discovery until the deadline gets there? I mean, I was on the district court. I set the discovery deadlines. If you'd have said to me, motion for summary judgment before the discovery deadline was set, and then here we have a motion that I need more time, and you've got all the information in your possession that he needs to do to get it, why would I say, no, he doesn't get any more time when I've already set the deadline? Why would I do that? Is there a case that says that's an abuse of discretion, that's the other side of it? I'm not aware of a case that says that. Did you look for one? I did not, Your Honor. Well, this is kind of unsatisfactory from both perspectives, because obviously on the one hand, he just wants to leave everything open forever and not do anything when he knows the motion for summary judgment is happening. We're required to rule on a 56D motion, which is for essentially, so what are the standards that we look at? And, I mean, your response needs to be that it's not an abuse of discretion under 56D to deny a motion for a continuance even though discovery hasn't lapsed. So, I mean, that's what you're here to defend. So saying that you haven't done any research on that, that is everyone just leaving everything to the court, which we do anyway, but I think lawyers are supposed to be helpful advocates of their position. Well, in this case, there is no evidence that the court below abused its discretion. The appellant was able to conduct discovery. He did have a lot of notice that motion for summary judgment was going to be filed. He did conduct discovery. And instead of immediately seeking a continuance once the motion for summary judgment was filed, he instead filed with his opposition a request for a continuance. So your answer is that if someone is not diligent, the fact that the discovery deadline has not come and gone, that the court still can decide that they're not diligent and that they didn't make a showing that there's anything that they would be likely to produce. What is your best case for that? I apologize, Your Honor. I don't have a case at hand. What's your best reasoning? My best reasoning is that a 5060, a continuance is granted in this situation if there is some evidence that he needs further information to adequately oppose the motion for summary judgment. Here, there was no indication of that. He did conduct the discovery needed to oppose summary judgment and, in fact, file his own cross-motion for summary judgment. If he felt he needed further discovery, then perhaps he should have. That is contrary to the fact that he believed he had sufficient evidence to file his own cross-motion for summary judgment against Eddie Bauer and Columbia. Judge Calhoun discussed with Mr. Hubbard earlier sanctions in another case and so forth. Do you think the firm's reputation had anything to do with Judge Burrell's ruling on this particular motion? I am not aware of the circumstances of whether the reputation has any role to play in it, but I am aware that Mr. Hubbard's law firm is fairly well known among the judges of the Eastern District. They are a very prolific law firm. That's not a crime. I mean, he's tied up to a fair shake no matter what. It's not a crime to be well known among the courts, but I cannot speak to whether that influenced Judge Burrell. All right. In terms of citing metabolite, what's your response to that? Did he cite metabolite as a basis for why the court had to give him a continuance? I believe he did so, Your Honor. Have you done any research in all the other cases that he cited metabolite? No, I have not, Your Honor. Let me maybe take up another idea here. It's my understanding that the plaintiff has already admitted that the barriers at Columbia had been remedied but wanted to continue with the one about the aisles. Is that how you understand it? Yes, Your Honor. So we can dismiss all of those allegations against Columbia. We have to focus in on aisles, right? Aisles, and he also argues that he's entitled to relief with respect to the dressing room door, which he identified in his expert report for the first time. Right. So when we get to the summary judgment then, if we're dealing at Columbia, do we focus in on aisles? Yes. And what's your best argument that we should issue a summary judgment or approve a summary judgment as to aisles? With respect to the aisles, Columbia submitted a declaration that clearly indicated that the aisles were all at least 36 inches in width. And Martinez's only response to that is, well, that's not enough because maybe in the future it might not be 36 inches and how can a promise that it will always be 36 inches? So the showing was that the aisles were fine now, but he wanted something against Columbia that would make sure that there wasn't a future problem. Yes, Your Honor. He still sought injunctive relief with respect to the aisles, despite the fact that the evidence showed that the aisles were no longer a barrier. Well, so if I go to that point, then what is the standard for mootness? Because it seems to me the only place you can go is mootness. You can't go to standing because certainly the aisles have now been cleared. He would have had standing at the time he files his complaint, so we're now at mootness. So what's your standard of review for mootness? Doesn't the standard of review for mootness suggest to me that you have to do more than clear the aisles? You have to show that it isn't capable of being repetitious as well? Well, if that's the case, that would lead to a situation where any business who was sued for barriers created by merchandise cluttering, some area that should be clear, could never escape being hit with an injunction because there's no possible way to assure that merchandise or other temporary items like shopping carts or baby carriages. Well, when I looked at the affidavit that you had prepared in the aisles, did it say anything about, and it'll always be that way, or did it say anything about, and it is always that way? It said that it was that way. Now. Yes. Then we look at what we have as it relates to Eddie Bauer. I guess as I look at what we have of Eddie Bauer, Eddie Bauer has eight allegations. It seems to me that the best they have on this Eddie Bauer is maybe the dressing room bench. Yes. Martinez argues that the dressing room bench does not constitute an equivalent facilitation that would be allowed under. And your argument is? Our argument is that it does. The applicable 1991 standards allows for a 48-inch bench. It does not require a gap on the side. It does not require the ability to make a diagonal transfer. What Eddie Bauer did was provide a bench that met and exceeded the 48-inch requirement. So a substantial equivalent access. Yes, Your Honor. Is your bench better for a disabled person or worse? Well, the 60 inches means that there are 12 additional inches that a disabled customer can use. And there are two Kohler cases that agree. Yes, Your Honor. Okay. I see you're out of time unless you have any other questions. Yes. I have no other questions. Thank you. Mr. Hubbard, unless there's anything else from the court. Nothing. Thank you. The case just argued is submitted.
judges: Silverman, Callahan, Smith